### HELLEBUSH v. ERDHOUSE ET AL.

ACTION TO SET ASIDE THE FRAUDULENT CANCELLATION OF A MORTGAGE.

In an action brought by H. against E. and a building association, to set aside the cancellation of a mortgage which had been executed to him on a certain tract of land owned by E. and which cancellation was alleged to have been obtained by the fraudulent conduct of E. and the building association; to this action P. was also made a defendant, it being averred that he claimed some interest in the property, but that it was subject to plaintiff's rights. The defendants, E. and the building associations, by their answers denied all fraud charged, and P. by his answer averred that after the cancellation of the mortgage of H. he, in good faith had bought the land in question, from E. subject to the mortgage of the building association, for full value, and claimed to be an absolute owner of the property subject to the mortgage of the building association : *Held*, that if the cancellation of the mortgage had been fraudulently obtained by the building association and E, as against them H. would have been entitled to have his mortgage take precedence of that of the building association, or he might have been subrogated perhaps to so much of the building association claim as would equal his debt, or be placed in its position with his claim; but his mortgage, unless this was done, could not be good as against P. if he bought in good faith without notice of the fraud.

APPEAL from the Court of Common Pleas of Hamilton county.

SMITH, J.

We state our conclusions in this case briefly.

In the first place, we are of the opinion that the judgment of the circuit court in 1887, in the case of *Hellebush* v. *Erdhouse*, the Building Association and the defendant, John A. Poll, was not a bar to the prosecution of this case. The same question was argued and presented to us once before, and the same conclusion arrived at, and after hearing the evidence in the case, and an additional argument, we have not seen cause to change the opinion then expressed.

The first named action was one brought by Hellebush against Erdhouse and the Building Association, to set aside the cancellation of a mortgage which had been executed to him on a certain tract of land then owned by Erdhouse, and which cancellation had been obtained, as he claimed, by the fraudulent conduct of Erdhouse, and the Building Association, and he prayed that his lien be restored as against Erdhouse and the Building Association, which had after the cancellation of the Hellebush mortgage, taken from Erdhouse a mortgage on the premises for $5,200.

To this action Poll was also made defendant—the averment against him being that he claimed some interest in the property, but that it was subject to plaintiff's rights, and calling upon him to set up his claim.

By their answers Erdhouse and the Building Association denied all of the fraud charged, and asserted the validity of the mortgage given to the Building Association. Erdhouse also denied that Hellebush had any valid claims against him, or any lien on the land by virtue of his mortgage; but it may be said that in the court of common pleas in that case, the question whether Erdhouse did owe Hellebush anything on the claim which had been secured by the mortgage was first tried, and it was determined and adjudged that he did still owe thereon about $3,800, but all other questions were reserved for further hearing. Erdhouse did not appeal from this finding, and it is a finality as to the amount. Poll, by his answer, averred that after the cancellation of the Hellebush mortgage, he, in good faith, had bought the land in question from Erdhouse subject to the Building Association mortgage, for full value, and claimed to be the absolute owner of the property subject to the Building Association mortgage, and denying all of the allegations of the petition not admitted by him. There was no reply by plaintiff to this answer. After a decree in the common pleas, the case was appealed to this court, and in 1887, a decree was therein entered as follows: "This cause came on to be heard upon the petition of the plaintiff, the answer of the defendant, the Third Ward Building Association, the original and amended answer of John A. Poll, the answer of John P. Erdhouse, a defendant herein, and the evidence, and was argued by counsel. On consideration whereof, and being fully satisfied, the court do find that the plaintiff has failed to maintain the issue on his part against the defendants, or against any of them." The petition was thereupon dismissed at the plaintiff's costs.

More than four years after the conveyance of this land to Poll by Erdhouse, the petition in this case was filed by Hellebush against Erdhouse, Poll and the grantee of Poll, averring that at the time of the conveyance to Poll, Erdhouse was largely indebted to him, and was insolvent, and that the deed so made to Poll by Erdhouse, was made with the intent to hinder and delay the creditors of Erdhouse, and was fraudulent on the part of Erdhouse and Poll, and that the grantee of Poll knew this when he took his deed, and that he, Hellebush, had not discovered this fraud until less than four years before the filing of the petition in this case.

In his answer to this petition, Poll pleaded that the decision in the former case, was a bar to any recovery against him in this case by Hellebush. Second, he denied the allegation of the plaintiff that he did not discover the fraud until less than four years before the filing of the petition; and third, he denied all fraud in the making of said deed, and averred that it was a purchase by him in good faith and for a full consideration.

It seems to us to be clear that these two actions were entirely separate and distinct—the claims made in each were wholly different. In the first, the issues, and it may be said the only issues were, whether the cancellation of the Hellebush mortgage had been obtained by the fraudulent conduct of Erdhouse and the Building Association; and if so, whether Poll knew of this when he purchased from Erdhouse. If the cancellation of the mortgage had been fraudulently obtained by the association and Erdhouse, Hellebush as against them, would have been entitled to have his mortgage take precedence of that of the Building Association, or he

Hellebush v. Erdhouse et al.

might have been subrogated perhaps to so much of the Building Association claim as would equal his debt, or be placed in its position with his claim. But his mortgage, unless this was done, could not be good as against Poll if he bought in good faith without notice of the fraud, and therefore it was that evidence in the first case as to the dealings of Erdhouse and Poll, and what he paid for the land, was admissible, and as we find, from the evidence in this case, was in fact offered in the first case. But under the pleadings in the case it could not have been offered to show that the deed from Erdhouse to Poll was made with intent to hinder and delay the creditors of Erdhouse, for no such issue was made, and two such claims could not have been asserted properly in the same petition; it would have been a misjoinder of causes of action. The question therefore, whether the deed was made to defraud the creditors of Erdhouse, was not in issue; and the only effect that can properly be given to the judgment of the circuit court was, that the cancellation of the Erdhouse mortgage to Hellebush was not procured by the fraud of the Building Association and Erdhouse (and this would have ended the case), and that Poll, when he took his deed, had no notice of any fraud, if it were committed.

In the second place we are satisfied from the evidence submitted that Hellebush did not discover the fraud alleged in this case until less than four years before filing his petition, and therefore that the statute of limitations did not run against him

The next question is, whether it is shown by the evidence, that the conveyance in question by Erdhouse to Poll, was fraudulent in fact, as having been made with the intent on the part of both grantor and grantee, to hinder, delay or defraud the creditors of Erdhouse, or whether it was conveyed to Poll, partly in consideration of a debt he held against Erdhouse, and of his promise to assume and pay the debt of Erdhouse to a third person, or on a secret trust that he would, after the payment of the amount due to himself, hold the property for the benefit of the wife of Erdhouse. There was evidence offered tending to prove all of these matters, and if it was shown that either of these things was so, it would be the duty of the court to declare the transaction a fraudulent one, and set aside the deed or hold it to be an assignment for the benefit of all of the creditors of Erdhouse.

As to this we may say, that in our judgment it is clearly shown by the evidence, that the conveyance in question is not such as should be allowed to stand. In the first place, we think it is clear that Poll did not have a valid claim against Erdhouse, for anything like the amount he claims, at the making of the deed in question, or in such sum as, with his assumption of the Building Association mortgage and the Graman debt, equaled the consideration price for the land, $10,000. We are impressed with the truth of the claim, that one of the objects of the conveyance was to put the title in such shape that it could not be reached by the creditors of Erdhouse, and that after his claim and assumption were paid, if anything was left, it was to be for the benefit of Mrs. Erdhouse. But if there was doubt as to this, we think that his assumption and agreement to pay the Graman debt, under the circumstances disclosed by him in his evidence in the trial in the court of common pleas, and not shown to be otherwise on the trial in this court, brings the transaction clearly within the adjudications of our supreme court, as to such secret trust making the deed operate as an assignment for the benefit of all of the creditors of Erdhouse, and such will be the holding of the court in this case, and the

decree can be entered accordingly, and a copy thereof certified to the probate court, that proper steps may be taken in pursuance of the provisions of section 6344, Rev. Stat.

*Wm. A. & L. A. Hicks*, and *Kramer & Kramer*, for Plaintiff.

*Healy & Brannan* and *A. J. Cunningham*, for Defendant.

---

## SPECIAL SCHOOL DISTRICTS.

[Butler Circuit Court, October Term, 1895.]

Smith, Swing and Cox, JJ.

STATE EX REL. SHEPHERD V. DUERR, AUDITOR.

**1. APPLICATION OF SECTION 3982, REVISED STATUTES.**
By the provisions of section 3982, R. S., which make it obligatory that in certain cases therein mentioned "the clerk shall publicly call the roll of all the members composing the board and enter on the record the names of those voting "aye," and of those voting "no," and if a majority of all the members of the board vote 'aye,' the president shall declare the motion carried," do not apply in terms to a vote upon the question of the establishment of a special school district.

**2. PROCEEDING TO ESTABLISH SPECIAL SCHOOL DISTRICTS.**
In a proceeding by a board of education of a certain township to change four subdistricts, there being four separate and distinct propositions submitted to the board for its action and not one embracing four: *Held*, that a separate petition and proceeding in each case was absolutely necessary, for each petition must be signed by freeholders residing in the territory sought to be embraced in the proposed special district.

**3. WRIT OF MANDAMUS NOT ALLOWED, WHEN.**
When, by a writ of mandamus, a county auditor is called upon to perform a certain act, and he refuses to do it, and it appears to the court, called upon to compel him to act, that the relators have no right to have the act done, then he will not be required to do it.

SMITH, J.

We are of the opinion that in this case, and the two other cases against the same defendant, which were submitted with it, the writ asked for should be refused, and the petitions dismissed. And upon the ground that the special school districts, which it is claimed were established by the board of education of Union township, Butler county, Ohio, on August 27, 1894, were in fact never legally established by it, and that the attempted action in the manner in which it was done, was against public policy, and therefore void.

The facts briefly stated were these: Four separate and distinct petitions had been presented to the board of education at the same meeting. Each prayed for the establishment of a special school district, and the territory sought to be included in each of said special school districts prayed for, was attempted to be described in the several petitions; that is, it was sought out by one of the petitions, to have sub-school district No. 2, changed to a special school district No. 2. By another, to have subdistrict No. 4, changed to special district No. 4. By another, to have subdistrict No. 6, changed to a special district No. 6, and by the fourth to have subdistrict No. 9, changed to a special district No. 9.

There were at this time seven sub-school districts in Union town-